IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Gibson, | : | |
| Plaintiff | : | Civil Action 2:08-cv-1114 |
| v. | : | Judge Graham |
| Stanley Taylor, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |

OPINION AND ORDER

This matter is before the Court pursuant to the January 14, 2011 Report and Recommendation of the Magistrate Judge recommending that Defendants' motion for summary judgment (Doc. 22) be granted.

The Report and Recommendation set forth the facts underlying this matter in detail, as well as the legal standard applied in evaluating a motion under Fed. R. Civ. P. 56.  Plaintiff Robert Gibson was a prisoner at the London Correctional Institution ("LoCI"), who had been given a medical bottom bunk restriction. However, on January 20, 2008, the current shift captain, Defendant Stanley Taylor ("Taylor"), placed Plaintiff in SMH (administrative segregation) due to a rule infraction.  Plaintiff was obliged to take the top bunk in his cell at SMH.  Four days later, he suffered a seizure while asleep, and was injured upon falling to the ground. Plaintiff has brought this suit against Taylor, and the warden of LoCi, Deb

Timmerman-Cooper ("Cooper"), claiming that they were deliberately indifferent to his legitimate medical needs in violation of his rights under the Eighth Amendment to the United States Constitution. Defendants moved for summary judgment on all claims.[1]

The Magistrate Judge recommended that summary judgment be granted with respect to Cooper, on grounds that Plaintiff had failed to exhaust his administrative remedies against her as required under the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). He found that none of Plaintiff's submitted grievances named Cooper or complained of any act or omission on her part. He further recommended that summary judgment be granted with respect to Taylor, on grounds that Plaintiff had failed to meet the subjective requirement of showing that Taylor had acted with "deliberate indifference" to his serious medical need. Plaintiff has now brought objections to the Report and Recommendation with respect to both Cooper and Taylor.

<u>Deb Timmerman-Cooper</u>. Plaintiff argues that he filed grievances asking for the names of individuals responsible for placing him in a top bunk. He concedes that none of these grievances referred to Cooper, but states that she should be estopped from asserting the affirmative defense of failure to exhaust administrative remedies, because the chief inspector responded to a grievance request for "I wanted

---

[1] Plaintiff brought claims under 42 U.S.C. §1983 and for common-law negligence. As the Magistrate Judge noted, the parties have conceded that the negligence claim must be dismissed for lack of subject matter jurisdiction. (Doc. 40 at fn 1.)

to know who put me on the top bunk... who was the officer that put me on the top bunk" (Doc. 33-1 at 3) as follows:

> The name of the officer who put you on a top bunk when you went to "the hole" won't be of consequence to you.  The officer follows instructions from his supervisor.  Unless security has the written documentation that an inmate has a bottom bunk, he places an inmate where he deems necessary.  Medical should have been contacted by you when this happened.

(Doc. 33-1 at 4.)  Plaintiff asserts that this refusal to provide more information prevented him from naming Cooper in his grievances:

> He knew that Defendant Taylor had ordered him into SMH, and exhausted his remedies against Taylor accordingly.  But the requirement imposed by the magistrate judge – that a pro se prisoner know the organizational structure of the prison and be aware of the various decision-making responsibilities of a prison's officials – requires too much.

(Doc. 41 at 5.)  This argument would make sense if Plaintiff had been deprived of Defendant Taylor's identity, or that of some supervisor of security, institutional medical inspector, or other such mid-level official.  However, both common sense and the substantial volume of litigation filed in this court by prisoners against their wardens indicate that no prisoner is unaware of the identity of his prison's warden.  Nothing prevented Plaintiff from filing a grievance against the warden if he believed (as he asserts now) that she was in some way ultimately responsible for his accident, and the inspector's refusal to provide the name of an "officer" who followed "instructions from his supervisor" created no bar to Plaintiff's ability to protest

3

Cooper's policies or actions as warden.[2]  The Magistrate Judge was correct in recommending that summary judgment be granted to Defendant Cooper for failure to exhaust administrative remedies.

<u>Stanley Taylor</u>

In his Report and Recommendation, the Magistrate Judge accurately reviewed the law of prisoners' medical Eighth Amendment claims:

> [T]he failure to attend to a serious medical need only rises to the level of deprivation of civil rights where both an objective and a subjective requirement have been met. Farmer v. Brennan, 511 U.S. 825, 833 (1994). A plaintiff must objectively show the existence of a "sufficiently serious" medical need. Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004). Furthermore, he must satisfy the subjective requirement by showing that prison officials acted with "deliberate indifference" to the serious medical need. An official does so where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate indifference is more than '"mere negligence"'.  Ford v. County of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008), quoting Bowman v. Corr. Corp. of Am., 350 F.3d 537, 544 (6th Cir. 2003).

(Doc. 40 at 7.)

The Magistrate Judge concluded that Taylor had not acted with deliberate indifference.  Plaintiff argued that a reasonable jury could either infer that Taylor was aware of the bottom bunk restriction and ignored it, or that Taylor in any case

---

[2] Furthermore, Plaintiff's failure to submit a grievance about Cooper is inexplicable in light of an allegation he made for the first time at deposition that he had actually spoken to Cooper personally to complain about being assigned to a top bunk.  (Doc. 25-1 at 17.)  Defendants have denied that Plaintiff ever spoke to Cooper as factually impossible in light of prison records of Cooper's schedule and whereabouts.  (Doc. 22 at 4.)

had a duty to call medical services of his own volition to learn of any medical restrictions a new prisoner might have. At deposition, Taylor testified that he had not been aware of Gibson's bottom bunk restriction. (Doc. 23-1 at 64-65.) He also described two scenarios for how SMH became aware of inmates' medical restrictions. In one, he testified that SMH supervisors usually became aware of medical restrictions when the new inmates themselves reported them. (Id. at 38-39.) In the other, he was given the following hypothetical situation:

> Q. Let's do this. John Smith is transferred into S.M.H.
> A. Okay.
> Q. The shift captain makes the call over to medical and says, "John Smith being transferred into S.M.H."
> A. Okay.
> Q. It turns out that John Smith has two or three different medical restrictions. He needs a cane, he needs a CPAP, he needs a bottom bunk.
> A. Okay.
> Q. At some point is medical going to tell someone in S.M.H. or a shift captain in some way – and I don't know which way – that those restrictions exist?
> A. I am sure, yeah. I am sure medical would, yes. It has in the past, yes.
> Q. How does that information get transmitted? When you were shift captain, how would you find out about those things from medical?
> A. Well, either when I am making rounds in [Inmate Health Services] or they would call me on the phone or by the radio and say, "This inmate needs this and needs these special requirements in S.M.H."

(Id. at 44-45.) Taylor also testified that the medical unit did not notify SMH of medical restrictions when SMH made the initial call to report a prisoner transfer. "The call is made to give information. It is not a two way." (Id. at 43.) The Magistrate Judge concluded, citing Farmer, supra, that "[i]t is too far a leap to

5

reasonably find, beyond the realm of mere supposition, both that Taylor personally must have been aware of facts from which the inference could have been drawn that Gibson had been endangered by placement in a cell without respect to his bunk restriction, and that Taylor actually drew that inference." (Doc. 40 at 11.)

Plaintiff objects, stating that a reasonable trier of fact could conclude that when Plaintiff was transferred to SMH, the medical unit contacted Taylor, the shift captain, to notify him of Plaintiff's medical restrictions, and that Taylor then deliberately chose to ignore this information. (Doc. 41 at 6.) However, as the Magistrate Judge found, such supposition is insufficient to create a genuine issue of material fact. While in evaluating a motion for summary judgment a court will draw all reasonable inferences in favor of the nonmoving party, the nonmoving party still has the obligation to demonstrate by specific citations to evidence that a fact is genuinely disputed. Taylor testified that he was not aware of, and had never been told about, Plaintiff's bottom-bunk restriction. Plaintiff argues that this is in conflict with Taylor's other testimony that he was confident (since it had done so in the past) that the medical unit would inform someone at SMH at some point of a new transfer's medical restriction. However, the record is devoid of any other evidence to support the theory that Taylor was actually so informed. Plaintiff does not cite to any information concerning the medical unit's policies on prisoner transfer to SMH to support Taylor's speculation as to their usual procedure. There appears to be no deposition testimony from personnel actually at the medical unit during the period in question, or written call logs, concerning whether they did, in

6

fact, contact SMH or Taylor to report Plaintiff's restriction. Absent such specific evidence demonstrating a genuine issue of material fact, the Magistrate Judge did not err in finding that a reasonable finder of fact could not conclude from Taylor's deposition testimony that he knew of and was deliberately indifferent to Plaintiff's serious medical need.

Furthermore, the Magistrate Judge found that, if Taylor were actually unaware of Plaintiff's restriction, then he could not have violated Plaintiff's Eighth Amendment rights by deliberately disregarding a known risk. Plaintiff argues that, in this scenario, Taylor would place the inmates he transferred to SMH at a serious risk of harm if he did not affirmatively contact the medical unit himself at the time of transfer to inquire whether the new inmate had a medical condition. This argument, however, would shift the supposed Eighth Amendment violation from deliberate indifference to Plaintiff's risk of falling from a top bunk to deliberate indifference to the general possibility that one of the inmates in SMH had some sort of condition which might lead to harm. Despite Plaintiff's somewhat inapposite analogy to a prison where no inquiry was ever made an inmate's medical condition and no means was provided for inmates to request medical care, the Magistrate Judge correctly found that Taylor's general dependence upon being told of medical restrictions, instead of vigilantly inquiring whether they might exist, was not deliberate indifference to a known risk to Plaintiff.[3] Defendant Taylor is entitled to

---

[3] Plaintiff alleged in his complaint (Doc. 3 at 7) that he had repeatedly asked permission to speak to Taylor and Cooper about his restriction and had been

judgment as a matter of law.

For the foregoing reasons, Defendant Deb Timmerman-Cooper is entitled to summary judgment on her affirmative defense of failure to exhaust administrative remedies prior to filing suit, and Defendant Stanley Taylor is entitled to summary judgment because no genuine issue of material fact exists as to whether he acted with deliberate indifference towards Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights.  Accordingly, the Court ADOPTS the Report and Recommendation, and OVERRULES Plaintiff's objections.  It further GRANTS Defendants' motion for summary judgment (Doc. 22).  The Clerk of Court is ORDERED to enter judgment in favor of the Defendants.

It is so ORDERED.

                                                s/James L. Graham
                                                JAMES L. GRAHAM
                                                United States District Judge

DATE: April 1, 2011

---

refused.  He also alleged that, when he arrived at SMH, he attempted to notify the escorting officer of his restrictions, but that his complaints were disregarded and that this officer later prevented him from taking measures to avoid a fall.  (Id.)  However, as the Magistrate Judge noted, despite naming this officer as a John Doe defendant in his original complaint and later apparently identifying him as corrections officer Mark McCoy, Plaintiff never amended his complaint to name McCoy or served him with process.  (Doc. 40 at fn 2.)